**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------
SHIVA STEIN,                          :
                                      :
              Plaintiff,              :    Civil Action No. 1:21-cv-2247-
                                      :
v.                                    :
                                      :    COMPLAINT FOR VIOLATIONS OF
AEGION CORPORATION, STEPHEN P.        :    SECTIONS 14(a) AND 20(a) OF THE
CORTINOVIS, STEPHANIE A. CUSKLEY,     :    SECURITIES EXCHANGE ACT OF
WALTER J. GALVIN, RHONDA              :    1934
GERMANY BALLINTYN, CHARLES R.         :
GORDON, M. RICHARD SMITH, and         :    JURY TRIAL DEMANDED
PHILLIP D. WRIGHT,                    :
                                      :
              Defendants.             :
--------------------------------------------------------
```

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Aegion, Inc. ("Aegion or the "Company") and the members Aegion board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Aegion by New Mountain Capital, L.L.C. ("New Mountain") and its affiliates.

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 10, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Carter Acquisition, Inc. ("Merger Sub"), a wholly owned subsidiary of Carter Intermediate, Inc. ("Parent"), itself an affiliate of New Mountain, will merge with and into Aegion with Aegion surviving the merger and becoming a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Aegion common share issued and outstanding will be converted into the right to receive $27.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Aegion stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Centerview Partners LLC ("Centerview") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Aegion stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because New Mountain is headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Aegion common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Stephen P. Cortinovis has served as a member of the Board since 1997.

11.     Individual Defendant Stephanie A. Cuskley has served as a member of the Board since 2005 and is the Chairwoman of the Board.

12.     Individual Defendant Walter J. Galvin has served as a member of the Board since 2014.

13.     Individual Defendant Rhonda Germany Ballintyn has served as a member of the Board since 2017.

14.     Individual Defendant Charles R. Gordon has served as a member of the Board since 2009 and is currently the Company's President and Chief Executive Officer.

15.     Individual Defendant M. Richard Smith has served as a member of the Board since 2009.

16.     Individual Defendant Phillip D. Wright has served as a member of the Board since 2011.

17.     Defendant Aegion is incorporated in Delaware and maintains its principal offices at 17988 Edison Avenue, Chesterfield, Missouri 63005.  The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "AEGN."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

20.     Aegion provides technologies to maintain, rehabilitate, and strengthen infrastructure in the United States, Canada, Europe, and internationally. It operates through two segments, Infrastructure Solutions and Corrosion Protection. The Company offers various solutions for rehabilitating and maintaining aging or deteriorating infrastructure; protecting new infrastructure from corrosion and other threats; and providing integrated professional services in engineering, procurement, construction, maintenance, and turnaround services for oil and natural gas companies. Its solutions include rehabilitation of water and wastewater pipelines; fusible polyvinyl chloride products for rehabilitation and new installation; fiber reinforced polymer systems for rehabilitation and strengthening; cathodic protection for corrosion engineering control

4

and infrastructure rehabilitation; pipe coatings for corrosion and thermal control and prevention; thermoplastic pipe lining for corrosion control, abrasion protection, and pipeline rehabilitation; and construction and maintenance of oil and gas facilities. The Company serves municipal, state, and federal governments, as well as corporate customers in various industries, including pipelines, energy, oil and gas, refinery, mining, general and industrial construction, infrastructure, water and wastewater, transportation, utilities, maritime, and defense. Aegion was founded in 1971 and is headquartered in Saint Louis, Missouri.

21.    On February 16, 2021, Aegion announced that they had entered into a merger agreement:

> ST. LOUIS, Feb. 16, 2021 (GLOBE NEWSWIRE) -- Aegion Corporation (NASDAQ:**AEGN**), a leading provider of infrastructure maintenance, rehabilitation and protection solutions, today announced that it has entered into a definitive merger agreement with affiliates of New Mountain Capital, L.L.C., ("New Mountain", and together with such affiliates "Buyer"), a leading growth-oriented investment firm headquartered in New York, in a transaction valued at approximately $963 million that will result in Aegion becoming a private company.
>
> Under the terms of the agreement, Buyer will acquire all outstanding shares of Aegion common stock for $26.00 per share in cash. This represents a premium of approximately 21% over Aegion's closing stock price of $21.45 on February 12, 2021, the last trading day prior to today's announcement and a premium of approximately 28% to Aegion's 30-day volume weighted average price as of February 12, 2021. The transaction, which was unanimously approved by the Aegion Board of Directors, is expected to close in the second quarter of 2021.
>
> "We are pleased to reach this agreement with New Mountain, which is in the best interests of Aegion stockholders and enables them to realize immediate value at a significant cash premium for their investment," said Stephanie Cuskley, Chairwoman of the Aegion Board. "Following a comprehensive evaluation of potential value-creation opportunities with our independent advisors over the last several years, the Board unanimously approved this transaction with

New Mountain, which has a proven track record of supporting businesses through investments in R&D and capital expenditures that recognize the value of achieving differentiated long-term growth."

"Over the past several years, we have actively reshaped Aegion into a more streamlined and focused company. This transaction provides stockholders a premium valuation, recognizes the value our team has created and represents a new chapter for our company," said Charles R. Gordon, Aegion's President and Chief Executive Officer. "As a private company, we will have the resources and long-term approach to build on our progress and further enhance our differentiated portfolio of technologies. We have met with the New Mountain team several times in recent years and are confident in their focus on supporting our business, our people and achieving our long-term goals. We look forward to working together with New Mountain as we continue to deliver transformational solutions to maintain, rehabilitate and protect critical infrastructure around the world."

Harris Kealey, Managing Director at New Mountain Capital, commented, "We have long admired Aegion, its management team and talented employees, and we believe New Mountain can bring the key ingredients Aegion needs to continue on its successful trajectory. By combining Aegion's existing strengths with our experience identifying and investing in high-quality growth businesses that provide infrastructure services, protection and maintenance across water, power and broad infrastructure assets, such as Inframark, Pearce Services and TRC Companies, Aegion will be well-positioned to advance its client offerings and technological capabilities through continued investments in its business. This will lead to new opportunities for employees and development of innovative solutions that protect communities and their infrastructure."

Mr. Gordon will remain with the Company through the completion of the transaction to ensure a smooth ownership transition and continuity of operations. The acquisition recognizes the long and successful heritage of Aegion in St. Louis and in the many communities where Aegion and its subsidiaries operate across the globe. The talented management team and loyal employee base are critical to the day-to-day success of the Company, and there is no expectation to relocate the headquarters away from the metropolitan area. New Mountain also expects to maintain Aegion's significant presence in its field offices around the world.

Upon the close of the transaction, New Mountain will review the previously announced sales process for Aegion's Energy Services segment and determine what best positions the business for long-term success.

**Transaction      Details      &      Path      to      Completion**
The transaction is expected to close in the second quarter of 2021 and is subject to Aegion stockholder approval, regulatory approvals and other customary closing conditions. The transaction is being financed through a combination of equity from affiliates of New Mountain and debt being provided by a combination of Jefferies, Credit Suisse and Deutsche Bank Securities Inc.

The Aegion Board of Directors recommends that Aegion stockholders approve the proposed merger and merger agreement. Aegion expects to hold a Special Meeting of Stockholders to consider and vote on the proposed merger and merger agreement as soon as practicable after the mailing of the proxy statement to its stockholders. Upon completion of the transaction, Aegion will become a privately held company and shares of Aegion common stock will no longer be listed on any public market.

**Fourth Quarter and Fiscal Year 2020 Earnings Results**
Aegion expects its fourth quarter and fiscal year 2020 earnings results to be in line with expectations. The Company intends to announce its results on March 10, 2021.

**Advisors**
Centerview Partners LLC is serving as exclusive financial advisor to Aegion, and Shearman & Sterling is serving as legal counsel. Jefferies and Houlihan Lokey are serving as financial advisors to New Mountain Capital, and Ropes & Gray is serving as legal counsel.

\* \* \*

22.     On March 15, 2021, Aegion announced that the merger agreement with New

Mountain has been amended:

ST. LOUIS, March 15, 2021 (GLOBE NEWSWIRE) -- Aegion Corporation (NASDAQ: AEGN) today announced that it has entered into an amendment to the definitive merger agreement with affiliates of New Mountain Capital, L.L.C. ("New Mountain", and together with such affiliates "Buyer"), a leading growth-oriented

investment firm headquartered in New York, to increase the consideration payable to holders of outstanding shares of Aegion common stock to $27.00 per share in cash from $26.00 per share in cash. The revised transaction price represents a total enterprise value of $995 million, including net debt. The revised per-share price represents a premium of 25.9% and 33.2% to Aegion's closing share price and 30-day VWAP, respectively, as of February 12, 2021, the last trading day prior to announcing the definitive merger agreement with New Mountain.

The amendment, which was unanimously approved by Aegion's Board of Directors, was negotiated between Aegion and the Buyer following the receipt by Aegion of an unsolicited, non-binding proposal from a third party to acquire all outstanding shares of Aegion common stock. Additionally, the Aegion Board of Directors, in consultation with its outside legal and financial advisors, determined that the third-party proposal was not, and could not reasonably be expected to result in, a "superior proposal" to the amended agreement with New Mountain.

In the amendment, as consideration for the increased purchase price, the break-up fee payable by Aegion in certain circumstances has increased from $30 million to $40 million. Further, the termination fee payable by Buyer to Aegion in certain circumstances has also increased from $60 million to $70 million.

The transaction remains subject to Aegion stockholder approval, regulatory approvals and other customary closing conditions and is expected to close in the second quarter of 2021. Aegion will schedule a Special Meeting of Stockholders to consider and vote on the proposed merger and amended merger agreement as soon as it is able to do so, and in doing so, intends to recommend that Aegion stockholders approve the proposed merger and amended merger agreement. Upon completion of the transaction, Aegion will become a privately held company and shares of Aegion common stock will no longer be listed on any public market.

* * *

23. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Aegion's stockholders are provided with the material information that has been

omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

24.     On March 15, 2021, Aegion filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Aegion Financial Projections*

25.     The Proxy Statement fails to provide material information concerning financial projections by Aegion management and relied upon by Centerview in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Aegion management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's

inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA, NOPAT, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[1]

29.    Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Centerview's Financial Analysis*

30.    With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the basis for selecting a reference range of 2021 EV/Estimated EBITDA Multiples of 9.5x to 12.0x.

31.    With respect to Centerview's *Selected Transactions Analysis* for the Company, the Proxy Statement fails to disclose (i) the consideration payable in each selected transaction; (ii) the relevant metrics for each of the target companies in the selected transactions; and (iii) the basis for selecting the reference range of EV/LTM adjusted EBITDA Multiples of 8.0x to 10.5x.

32.    With respect to Centerview's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the implied terminal value for the Company; (ii) the inputs and assumptions underlying the use of terminal growth rates of 2.0% to 3.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 10.0% to 11.50%; and (iv) the number of fully-diluted outstanding shares of Company common stock calculated as of February 12, 2021.

33.    In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

36.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Centerview and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

39.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of Aegion within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

directors of Aegion, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Aegion, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Aegion, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 15, 2021                    **MELWANI & CHAN LLP**

By:  /s *Gloria Kui Melwani*
         Gloria Kui Melwani (GM5661)
         1180 Avenue of the Americas, 8th Fl.
         New York, NY 10036
         Telephone: (212) 382-4620
         Email: gloria@melwanichan.com

         *Attorneys for Plaintiff*